UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| LLOYD EUGENE WARD, | ) | |
| | ) | 14-32939-BJH-7 |
| Debtor. | ) | |
| ------------------------------------------------------ | ) | ADVERSARY NO. |
| LLOYD EUGENE WARD, | ) | |
| | ) | 15-03050-BJH |
| Appellant, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:17-CV-0692-G |
| ROBERT YAQUINTO, ET AL., | ) | |
| | ) | |
| Appellees. | ) | |


## MEMORANDUM OPINION AND ORDER


Before the court is an appeal from the bankruptcy court's February 16, 2017

final judgment. For the reasons set forth below, the bankruptcy court's decision is

affirmed.

## I. BACKGROUND

### A. Nature of the Appeal and Procedural History

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 158, which

provides in relevant part that "[t]he district courts of the United States shall have

jurisdiction to hear appeals (1) from final judgments . . . of bankruptcy judges

entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."[1]  28 U.S.C. § 158(a)(1).  The issues in this bankruptcy appeal relate to certain filing deadlines contained in the Federal Rules of Bankruptcy Procedure, as well as the bankruptcy court's ultimate decision to deny the appellant's receipt of discharge under 11 U.S.C. § 727.  *See* Brief of Appellant at 1-3 (docket entry 6).

The appellees are a group comprised of individual judgment creditors (the "creditors") and the Chapter 7 trustee of the appellant's bankruptcy estate.  *Id.* at 3. The appellant, Lloyd Eugene Ward ("Ward"), is a lawyer licensed to practice in Texas.  Memorandum Opinion at 3 (Record on Appeal, Volume 1 at 000015) (docket entry 2-1).

These proceedings date back to April 9, 2014, when a number of the appellees obtained a final judgment in the United States District Court for the Northern District of Texas, Dallas Division, against a group of defendants, including one of Ward's legal entities, Lloyd Ward, PC.[2]  Brief of Appellant at 3.  On May 1, 2014, in the aftermath of the civil judgment, Ward filed a voluntary petition for relief under

---

[1]      Under 28 U.S.C. § 157, an adversary proceeding to determine the dischargeability of an individual debt is one of the "core proceedings" subject to this court's appellate review.  28 U.S.C. § 157(b)(1), (b)(2)(I); 28 U.S.C. § 158(a)(1); Appellees' Brief at 4 n.1 (docket entry 16).

[2]      In the previous civil case, *Parker v. ABC Debt Relief, Limited Company*, 3:10-CV-1332-P, 2014 WL 12649855 (N.D. Tex. Apr. 9, 2014) (Solis, J.), some of the appellees obtained a judgment against Ward's legal entity and other defendants for the approximate sum of $782,838.25.  Brief of Appellant at 3.

Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "EDTex Court"). Memorandum Opinion at 3. One day later, in accordance with Federal Rule of Bankruptcy Procedure 2002, the clerk of the EDTex Court issued a notice informing the parties in interest that, pursuant to § 341 of the Bankruptcy Code,[3] a meeting of the creditors would be held on May 30, 2014, and the deadline to object to Ward's pursuit of a discharge and the dischargeability of individual debt would be July 29, 2014. *Id.* at 7; Brief of Appellant at 5-6; Appellees' Brief at 2; Appellees' Appendix at 000001 (docket entry 17-1).

On May 13, 2014, the creditors filed an unopposed motion in the EDTex Court to transfer the case to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "NDTex Court"). Memorandum Opinion at 4; Brief of Appellant at 6. On June 5, 2014, the EDTex Court granted the motion to transfer, and on June 20, 2014, the NDTex Court received the case. Memorandum Opinion at 4. A few days after proceedings commenced in the Northern District of Texas, the clerk of the court in Dallas issued a second notice containing a new set of dates and deadlines. *Id.*; Appellees' Appendix at 000005. According to the NDTex Court's notice, a meeting of the creditors would take place on July 22, 2014, and the

---

[3]     11 U.S.C. § 341(a) provides that "[w]ithin a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors."

deadline for filing objections to Ward's discharge and the dischargeability of his individual debt would be September 22, 2014. *Id.* On July 22, 2014, in compliance with the new notice, the appointed trustee conducted the § 341 meeting. *Id.*

On August 27, 2014, the creditors filed a motion to extend the deadline to file objections from September 22, 2014 to December 22, 2014. *Id.* Ward contested the extension because, in his view, the request was untimely under Rules 4004 and 4007 of the Federal Rules of Bankruptcy Procedure. *Id.* at 5. After notice and a hearing, the NDTex Court denied Ward's objection and entered an order extending the deadline in question to December 22, 2014. *Id.* Subsequently, after notice and a hearing, the deadline was extended to February 3, 2015, and eventually to May 1, 2015. *Id.* According to the bankruptcy court, "the [appellees] established cause for such further extensions." *Id.*

On April 30, 2015, just before expiration of the final deadline for objections, the appellees filed their "Original Complaint Objecting to Discharge Under 11 U.S.C. § 727 and 11 U.S.C. § 523." *Id.* After the appellees thrice amended their complaint, and subsequent to the bankruptcy court granting Ward partial summary judgment on certain issues related to the claims of the creditors, the remaining issues in the case were tried before the NDTex Court from December 12, 2016 to December 14, 2016. Brief of Appellant at 8-9. On January 26, 2017, the bankruptcy court issued a memorandum opinion containing its findings of fact and conclusions of law. *Id.*

On March 2, 2017, Ward filed a notice of appeal from the bankruptcy court's final judgment dated February 16, 2017. Notice of Appeal at 2 (Record on Appeal, Volume 1 at 000007) (docket entry 2-1). Ward amended his notice of appeal on March 8, 2017. Amended Notice of Appeal at 5 (Record on Appeal, Volume 1 at 000001) (docket entry 2-1). On March 9, 2017, the bankruptcy clerk transmitted the appeal now presently before the court. Notice of Transmittal (docket entry 1).

B. <u>The Bankruptcy Court's Opinion</u>

The bankruptcy court's memorandum opinion is quite comprehensive, covering a range of issues, some pertinent to the instant appeal and some not.

Before reaching the merits of the adversary proceeding, the bankruptcy court first addressed a series of preliminary matters. In particular, the bankruptcy court considered "Ward's renewed argument that the [a]dversary [p]roceeding must be dismissed because the Original Complaint was not timely filed." Memorandum Opinion at 6. On this preliminary matter, the bankruptcy court concluded that because courts have harmonized the strict deadlines prescribed by the Federal Rules of Bankruptcy Procedure with principles related to equity, the parties were entitled to rely on the information contained in the NDTex Court's notice. *Id.* at 9. Thus, according to the bankrupt court, the applicable deadline for parties to file objections was September 22, 2014, rendering the creditors' motion for an extension -- and, consequently, their complaint objecting to discharge -- timely. *Id.* at 9-10.

After resolving the preliminary matters before it, the bankruptcy court turned to the merits of the case. The bankruptcy court devoted much of its opinion to an exhaustive recitation of the numerous false statements and misrepresentations made by Ward throughout the course of the proceedings. *See generally* Memorandum Opinion 21-51. And ultimately, the bankruptcy court concluded that pursuant to 11 U.S.C. § 727(a)(4)(A), it was appropriate to deny Ward's receipt of discharge. *Id.* at 55. Near the end of the opinion, the bankruptcy court summarized its findings on Ward's "false oaths" as follows:

> [The] Court finds that (i) Ward made numerous false statements during the Case under oath, including in his Schedules, Amended Schedules, [Statement of Financial Affairs], Amended [Statement of Financial Affairs] and in his testimony both at trial and at his § 341 meeting of creditors, (ii) Ward knew the statements were false when he made them, (iii) Ward made the statements with fraudulent intent or, at the very least, with a reckless disregard for the truth sufficient to support a finding of fraudulent intent, as evidenced by Ward's serial false oaths and gross carelessness and outright disregard for accuracy in preparing documents filed under oath with this Court, and (iv) the false statements related materially to the Case because they each bear a relationship to Ward's business transactions or estate, and/or concern the discovery of assets, business dealings, or the existence and disposition of his property. Thus, the Court concludes that Ward's receipt of a discharge must be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

*Id.* at 54-55.

Following its § 727(a)(4)(A) analysis, the bankruptcy court changed focus and considered the creditors' contention that Ward's discharge should be denied under 11 U.S.C. § 727(a)(5). *Id.* at 55. With respect to § 727(a)(5), the bankruptcy court concluded that "Ward has failed to explain satisfactorily the loss of at least $900,000 in compensation paid to him in 2010 as an officer of Lloyd Ward Group, P.C." *Id.* This insufficient explanation provided an additional basis upon which to deny Ward's receipt of discharge. *Id.*

## C. The Parties' Contentions on Appeal

Ward, the appellant, asks this court to reverse the bankruptcy court's decision and remand the case with instructions to dismiss the adversary proceeding. Brief of Appellant at 32. Ward provides two primary contentions in support of his requested relief.

First, he maintains that in light of the strict deadlines contemplated by Rules 4004 and 4007 of the Federal Rules of Bankruptcy Procedure, the bankruptcy court erred in concluding that the time to file objections to discharge or the dischargeability of individual debt could be extended after the expiration of the deadline contained in the EDTex Court's initial notice. *Id.* at 31. Relatedly, Ward also avers that because the bankruptcy court did not exercise discretion in concluding that the creditors' Original Complaint was filed in a timely manner, the court should review that determination *de novo*. See *id.* at 1-2.

Second, Ward argues that the bankruptcy court erred in denying him discharge under both § 727(a)(4)(A) and § 727(a)(5) of the Bankruptcy Code. *Id.* Specifically, as to § 727(a)(4)(A), Ward urges that the bankruptcy court's denial of discharge was clearly erroneous because the misstatements contained in his financial disclosures and oral testimony were made unintentionally rather than with fraudulent intent, and, further, they were relatively few in number, mostly immaterial, and occurred under significant time pressure and stress. See *id.* at 24-28. With respect to § 727(a)(5), Ward contends that the bankruptcy court erred in denying him discharge because the creditors "failed their initial burden to show that the debtor possessed 'substantial, identifiable assets' that are unavailable for distribution for creditors." *Id.* at 28, 31.

In their brief, the appellees address Ward's contentions in turn. First, the appellees argue that the bankruptcy court correctly concluded that they filed their complaint in a timely fashion because the bankruptcy court has equitable power to grant extensions for filing a complaint in cases where, as here, "the [c]lerk of the [b]ankruptcy [c]ourt affirmatively represented to the parties in interest that the deadline was extended upon transfer of the case from the Eastern District of Texas to the Northern District of Texas." Appellees' Brief at 3. Second, the appellees maintain that this court should affirm the bankruptcy court's decision to deny Ward's receipt of discharge under §§ 727(a)(4)(A) and (a)(5) because the bankruptcy court's findings are not clearly erroneous. See *id.*

## II. ANALYSIS

### A. Legal Principles

#### 1. *Time Limits for Objections and Extensions:*
*Federal Rules of Bankruptcy Procedure 4004 and 4007*

"Federal Rule of Bankruptcy Procedure 4004(a) governs the time for filing a complaint objecting to discharge." *Founders Equity Securities, Inc. v. Higgins (In re Higgins)*, No. 03-47055-DML-7, 2006 WL 6508479, at *1 (Bankr. N.D. Tex. Sept. 19, 2006) (Lynn, Bankr. J.). Under Rule 4004(a), a complaint objecting to discharge "must be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." *Id.* (quoting FED. R. BANKR. P. 4004(a)) (internal quotations omitted). When a party seeks to extend the time to object, courts look to Rule 4004(b) for guidance. Rule 4004(b)(1) provides that "[o]n motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge. Except as provided in subdivision (b)(2),[4] the motion shall be filed before the time has expired." FED. R. BANKR. P.

---

[4]      Rule 4004(b)(2) provides:

> A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have

(continued...)

4004(b)(1); *In re Castleman*, No. 10-36376-SGJ-7, 2011 WL 925567, at *3 (Bankr.

N.D. Tex. Mar. 14, 2011) (Jernigan, Bankr. J.) ("Pursuant to Federal Bankruptcy

Rule 4004(b), a bankruptcy court may 'for cause' grant a motion of any party in

interest to extend the discharge objection deadline if such motion has been filed

before the deadline.").  Federal Rule of Bankruptcy Procedure 4007,[5] like Rule 4004,

"sets a fixed limitation period of 60 days and further constrains the granting of

extensions." *Neeley v. Murchison*, 815 F.2d 345, 346 (5th Cir. 1987).  Under Rule

4007, "[t]he bankruptcy court can extend the time only if the creditor has filed a

motion before the 60-day period expires, and then only for cause." *Id.* (internal

quotation marks omitted).

---

[4](...continued)

> knowledge of those facts in time to permit an
> objection.  The motion shall be filed promptly
> after the movant discovers the facts on which
> the objection is based.

[5]     Federal Rule of Bankruptcy Procedure 4007(c) provides in relevant part:

>  [A] complaint to determine the
> dischargeability of a debt under § 523(c) shall
> be filed no later than 60 days after the first
> date set for the meeting of creditors under
> § 341(a).  The court shall give all creditors no
> less than 30 days' notice of the time so fixed
> in the manner provided in Rule 2002.  On
> motion of a party in interest, after hearing on
> notice, the court may for cause extend the
> time fixed under this subdivision.  The
> motion shall be filed before the time has
> expired.

### 2.  *Objecting to Discharge Under 11 U.S.C. § 727(a)(4)(A) and § 727(a)(5)*

"The bankruptcy code requires discharge of the debtor unless a statutory exception applies."  *Cadle Company v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009) (citing 11 U.S.C. § 727(a)).  These statutory exceptions are construed narrowly against the creditor and liberally in favor of the debtor.  *Id.* (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)).  For this appeal, the relevant statutory exceptions are §§ 727(a)(4)(A) and (a)(5).

Federal Rule of Bankruptcy Procedure 4005 provides that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."[6]  FED. R. BANKR. P. 4005.  "If the plaintiff establishes a prima facie case, then the burden shifts to the debtor to present evidence that he is innocent of the charged offense."  *In re Duncan*, 562 F.3d at 696.

"Section 727(a)(4) conditions the debtor's discharge on his truthfulness."  *Id.* at 695.  Under § 727(a)(4)(A), the court is required to grant the debtor's requested discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  Pursuant to § 727(a)(5), "[t]he court shall grant the debtor a

---

[6]  According to the advisory committee's notes, Rule 4005 places the burden of production as well as the ultimate burden of persuasion on the party objecting to discharge.  FED. R. BANKR. P. 4005 notes of advisory committee on rules -- 1983.

discharge, unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5).

## B. Application

### 1. *Standard of Review*

According to established Fifth Circuit precedent, "reviewing courts -- district and courts of appeals alike -- must accept the findings of fact of the bankruptcy court unless the findings are clearly erroneous."  *Coston v. Bank of Malvern (In re Coston)*, 987 F.2d 1096, 1098 (5th Cir. 1992).  Unlike findings of fact, however, the court generally reviews conclusions of law *de novo*.  *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1020 (5th Cir. 2010).

With respect to the timeliness issue, because the bankruptcy court's determination that the deadlines contained in the Federal Rules of Bankruptcy Procedure, while strict, can coexist with equitable principles is a conclusion of law, the court will review that conclusion *de novo*.  See *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 341 (6th Cir. 2003).  If, after *de novo* review, this court agrees with the bankruptcy court's legal conclusion, the court would then consider whether the bankruptcy court's use of its equitable power in determining that the parties were entitled to rely on the second clerk's notice constituted an abuse of discretion.  See

*id.* at 344.  But the court will review the bankruptcy court's decision to deny Ward's

receipt of discharge under § 727 for clear error.  See *In re Duncan*, 562 F.3d at 697.

### 2.  *The Timeliness of the Creditors' Motion for an Extension*

In this bankruptcy appeal, the parties have presented the court with relatively

novel facts.  To review, after Ward commenced this Chapter 7 proceeding in the

EDTex Court and the clerk of that court issued a notice with the time frame for, *inter*

*alia*, the § 341 creditors' meeting, the parties then voluntarily transferred the case to

the NDTex Court.  Memorandum Opinion at 3-4.  After proceedings began in Dallas,

the clerk for the NDTex Court issued a second notice containing new deadlines.  *Id.*

at 4.  Thereafter, the trustee and the creditors held their meeting in accordance with

dates set forth in the second notice.  *Id.*  Within 60 days of the date of that

meeting -- but after the 60-day time period prescribed by the EDTex Court's initial

notice -- the creditors filed a motion for an extension of time to file a complaint

objecting to discharge.  *Id.*  From that stage of the proceedings forward, the

bankruptcy court was tasked with determining whether the creditors' motion was

timely.  On appeal, the timeliness question is now before this court.

Typically, a creditor in a Chapter 7 liquidation proceeding has "60 days after the

first date set for the meeting of the creditors" to file an objection to the debtor's

discharge.  *Kontrick v. Ryan*, 540 U.S. 443, 446 (2004) (quoting Fed. R. Bankr. P.

4004(a)).  If creditors desire an extension, the Federal Rules of Bankruptcy Procedure

provide that the bankruptcy court may extend the 60-day time limit "for cause," so long as the creditors filed a motion for an extension "before the time has expired." *Id.* (quoting FED. R. BANKR. P. 4004(b)).  To better serve the Bankruptcy Code's policy objectives, courts strictly construe the time constraints provided by Rules 4004 and 4007.  See *id.* at 448 ("Reinforcing Rule 4004(b)'s restriction on extension of the Rule 4004(a) deadline, Rule 9006(b)(3) allows enlargement of the time for taking action under Rule 4004(a) only to the extent and under the conditions stated in . . . Rule 4004(b).") (internal brackets and quotation marks omitted); *State Bank & Trust, National Association v. Dunlap (In re Dunlap)*, 217 F.3d 311, 315 (5th Cir. 2000) ("The strict time limitation placed upon creditors who wish to object to a debt's dischargeability reflects the Bankruptcy Code's goal of providing debtors with a fresh start."); *Neeley*, 815 F.2d at 346-47 ("Rule 4007(c)[] evince[s] a strong intent that the participants in bankruptcy proceedings be assured that, within the set period of 60 days, they can know which debts are subject to an exception to discharge.  This fixed, relatively short limitation period enables the debtor and creditors to make better-informed decisions early in the proceedings.").

In the instant case, although the bankruptcy court acknowledged that courts often strictly construe the deadlines found in Rules 4004 and 4007, *see* Memorandum Opinion at 7, it nonetheless concluded that the case before it was exceptional. According to the bankruptcy court, "Bankruptcy Rules 4004 and 4007 can be, and

have been, harmonized with other principles and rules without losing their strictness, and the Fifth Circuit has recognized situations in which the deadline should be deemed to have occurred *after* the sixtieth day following the first day set for the § 341 meeting of creditors." Memorandum Opinion at 8 (emphasis in original). With this precedent in mind, the bankruptcy court concluded that because the NDTex Court clerk issued a second notice with new deadlines and the parties were entitled to rely on that second notice, the creditors' motion for an extension of time to file an objection was timely. *Id.* at 8-9.

In support of its conclusion, the bankruptcy court cited a series of cases to exemplify the types of situations in which the Fifth Circuit and other courts have determined that the deadline to file a motion for an extension fell beyond the sixtieth day following the first day set for the § 341 meeting of the creditors. See *id.* at 8. Because large portions of Ward's submissions are devoted to distinguishing the cases relied upon by the bankruptcy court, the court finds it appropriate to discuss each of the relevant cases in turn. *See* Brief of Appellant at 15 ("The [bankruptcy] [c]ourt supported its conclusion on its view of Fifth Circuit authorities and lower court decisions. The Fifth Circuit authorities, however, are inapposite to the case at bar as they involve instances were [sic] given the procedural posture[,] creditors had no ability to protect or preserve their rights by complying with the applicable deadline or the rule had to be construed in conjunction with other applicable procedural rules.").

The bankruptcy court first relied upon *In re Coston*. In that case, the Fifth Circuit concluded that in the context of a stay under Rule 1014(b),[7] a creditor's failure to file an objection within sixty days of the date scheduled for the first meeting of creditors does not necessarily render the objection untimely. *In re Coston*, 987 F.3d at 1099. According to the court, "[i]n the stay situation, the new date set by the court is the 'first date' under Rule 4007(c); it is not merely a rescheduling of the old pre-stay date." *Id.* Significantly, the Fifth Circuit reasoned that while "[f]acially, this ruling may appear to contradict the wording of Rule 4007(c)[,]" "in light of Rule 1014(b), no other result is sensible or possible." *Id.*

The bankruptcy court referenced another Fifth Circuit case in its memorandum opinion, *In re Dunlap*. In that case, the court of appeals extended its *In re Coston* decision to situations where the bankruptcy court prematurely dismissed the proceedings. *In re Dunlap*, 217 F.3d at 316-17. After the bankruptcy court vacated

---

[7]     Rule 1014(b) provides in pertinent part:

> If petitions commencing cases under the Code or seeking recognition under chapter 15 are filed in different districts by, regarding, or against (1) the same debtor, . . . the court in the district in which the first-filed petition is pending may determine, in the interest of justice or for the convenience of the parties, the district or districts in which any of the cases should proceed.... The court may order the parties to the later-filed cases not to proceed further until it makes the determination.

its previous order dismissing the proceedings, the clerk of the court issued a notice

rescheduling the § 341 meeting.  See *id.* at 317.  Under the circumstances, the Fifth

Circuit concluded that, for purposes of Rule 4007(c), the "first date set" for the

meeting of the creditors was the date set after the court reopened the case.  *Id.*

According to the court, "application of the [*In re*] *Coston* rule [to the present case]

best preserves the integrity of the 60-day period following the meeting of the

creditors, facilitates informed decision making by creditors, and allows creditors

sufficient unequivocal information to calculate the bar date with certainty."  *Id.* at

317.

The bankruptcy court also cited *In re Castleman*.  In that case, the NDTex Court

grappled with facts similar to those presented in the instant case.  Specifically, after

the bankruptcy court clerk issued an initial notice containing deadlines and the date

for the meeting of the creditors, the appointed trustee resigned because of a conflict

of interest.  *In re Castleman*, 2011 WL 925567, at *1.  After the bankruptcy court

appointed a new trustee, the clerk issued an amended version of the previous notice,

which reset certain deadlines, including the date for the meeting of creditors under

§ 341.  *Id.*  Ultimately, the bankruptcy court concluded that "[b]ecause the amended

version of the [notice] set February 8, 2011 as the deadline to object to the [d]ebtor's

discharge, [the] parties were entitled to rely on that notice, and based on this

[c]ourt's equitable powers, February 8, 2011 will be deemed to have been the original deadline for parties to have filed objections . . . ." *Id.* at *4.

The bankruptcy court in *In re Castleman* rested its decision on three bases. First, the court noted that "the deadline established by Federal Bankruptcy Rule 4004(a) is not jurisdictional and may be waived." *Id.* at 3 (citing *Kontrick*, 540 U.S. at 459-60). In other words, if the deadlines provided by Rules 4004 and 4007 were jurisdictional, the bankruptcy court would lack authority to alter them. *In re Maughan*, 340 F.3d at 341. But because the deadlines are non-jurisdictional, they are subject to the bankruptcy court's equitable authority. *Id.* Second, much like the bankruptcy court in the present case, the bankruptcy court in *In re Castleman* referenced Fifth Circuit cases "recogniz[ing] other situations in which the discharge objection deadlines should be deemed to have occurred after the sixtieth day following the first date set for the meeting of the creditors under section 341 of the Bankruptcy Code." *In re Castleman*, 2011 WL 925567, at *3. Third, the bankruptcy court identified cases standing for the proposition that when clerks make "affirmative misstatements about discharge objection deadlines," the parties are entitled to rely on the clerks' misstatements, even if they do not conform to the provisions of Rule 4004(a). *Id.* (citing *Official Committee of Unsecured Creditors of the Project Group, Inc. v. Crawford (In re Crawford)*, 347 B.R. 42, 46 (Bankr. S.D. Tex. 2006)).

As in *In re Castleman*, the facts of *In re Crawford* -- another case the bankruptcy court relied upon -- presented the Bankruptcy Court for the Southern District of Texas with a clerk's "affirmative misstatement" about filing deadlines. See *In re Crawford*, 347 B.R. at 47. According to the bankruptcy court in *In re Crawford*, although the Fifth Circuit has never specifically ruled on a case involving a clerk's affirmative misstatement, existing authority suggests that "the Fifth Circuit would follow the Sixth, Eighth, Ninth, and Tenth circuits in holding that an affirmative misstatement of the deadlines extends the deadlines (i) because the Fifth Circuit has found two exceptions to the deadline and (ii) because the Fifth Circuit has suggested as much in *Neeley* footnote 5." *Id.* at 48.

In *Neeley*, the final case referenced by the bankruptcy court, the Fifth Circuit did not rule on a set of facts involving a clerk's affirmative misstatement of deadlines. Instead, the court of appeals concluded that because Neeley was aware of the bankruptcy proceedings and received notice of the date of the initial meeting of the creditors, the mere fact that the clerk failed to specify a bar date did not relieve Neeley from the requirements of Rule 4007(c). See *Neeley*, 815 F.2d at 347. But toward the end of its opinion, the Fifth Circuit "went to great pains to differentiate between no information from the clerk and affirmative but erroneous notice of a bar date from the clerk." *In re Crawford*, 347 B.R. at 47 (internal quotation marks omitted). In footnote 5 of *Neeley*, the Fifth Circuit clarified that "today's case is not

one in which the clerk gave an affirmative but erroneous notice of a bar date upon which the creditor might reasonably have relied." *Neeley*, 815 F.2d at 347 n.5.

On appeal, Ward contends that the decisions cited by the bankruptcy court are distinguishable from the present case. With respect to *In re Castleman* and *In re Crawford* -- in particular, their reliance on footnote 5 of *Neeley* -- Ward insists that because footnote 5 is "clearly dictum," it has no precedential value and can be disregarded by a subsequent appellate panel. Brief of Appellant at 19. Ward also argues that reliance on *In re Coston* and *In re Dunlap* is misplaced because those cases involved instances "where creditors [were] not able to protect or preserve their rights due to the . . . procedural posture." *Id.* at 19-20. In Ward's view, this case is dissimilar from the facts of *In re Coston* and *In re Dunlap* in that the creditors here never lost access to a forum in which to file a timely objection or motion for extension. *Id.* at 20. Returning to the Fifth Circuit's *Neeley* decision, Ward contends that even assuming *arguendo* that footnote 5 of *Neeley* has persuasive value, reliance on a clerk's affirmative misstatement must be reasonable. *Id.* According to Ward, no evidence in the present case suggests that the creditors' reliance on the notice issued by the NDTex Court clerk was reasonable. *Id.* In fact, Ward maintains that the creditors' reliance on the affirmative misstatements found in the second clerk's notice was unreasonable because the creditors failed to act diligently in determining the

applicable deadlines and, further, the Federal Rules of Bankruptcy Procedure do not contemplate a reset of deadlines following a transfer. *Id.* at 21-22.

Rather than addressing Ward's contentions directly, the appellees emphasize the following language from *In re Crawford*: "Courts of Appeal are Unanimous that Clerks' Affirmative FRBP 4004 Error Allow Late Filing." Appellees' Brief at 5 (quoting *In re Crawford*, 347 B.R. at 47) (capitalization and abbreviation in original). While the Fifth Circuit has yet to directly address the fact pattern presented by the instant case, bankruptcy courts in Texas and numerous courts of appeals agree that creditors' reliance on a clerk's affirmative misstatement is reasonable and permits late filing. See, e.g., *In re Castleman*, 2011 WL 925567, at *3-4; COLLIER ON BANKRUPTCY ¶ 4004.02[4][b] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2011) ("The courts have not strictly adhered to the rule if the court itself has given confusing or incorrect notice of the deadline. This sometimes occurs when a second notice of the creditor's meeting is sent and contains a deadline different from that stated in the first notice.").

The Tenth Circuit, for example, has stated that "[a] court has the inherent equitable power to correct its own mistakes[,]" and "[a]lthough the provisions of Rules 4004 and 4007 are strictly enforced, courts have almost uniformly allowed an out-of-time filing when the creditor relies upon a bankruptcy court notice setting an incorrect deadline." *Themy v. Yu (In re Themy)*, 6 F.3d 688, 689 (10th Cir. 1993).

In a case with facts similar to those presented here, *Anwiler v. Patchett (In re Anwiler)*, 958 F.2d 925 (9th Cir.), *cert. denied*, 506 U.S. 882 (1992), the Ninth Circuit concluded that because the creditors' confusion resulted from clerks of two courts setting different deadlines, the "[c]reditors could have reasonably believed that the [second] notice was operative since it was issued by the court which had jurisdiction over the case." *Id.* at 929.  According to the court of appeals, "[t]he equitable power given to courts by 11 U.S.C. § 105(a)[8] would be meaningless if courts were unable to correct their own mistakes." *Id.*

In his reply brief, Ward submits that the bankruptcy court's decision on the timeliness issue "should be reversed as neither its equitable power under 11 U.S.C. § 105(a) nor its inherent powers are so broad to circumvent or contradict the express provisions of the Bankruptcy Rules."  Reply Brief of Appellant at 1 (docket entry 18). Although Ward acknowledges that bankruptcy courts have inherent and equitable powers, he asserts that the bankruptcy court cannot rely on those powers to extend inflexible deadlines.  *Id.* at 5.  On the issue of a bankruptcy court's equitable powers under § 105(a), Ward highlights Fifth Circuit precedent stating that "[t]he statute does not authorize the bankruptcy courts to create substantive rights that are

---

[8]      While 11 U.S.C. § 105(a) does not permit bankruptcy courts to override explicit mandates of other sections of the Bankruptcy Code, the statute does afford bankruptcy courts the authority to "issue any order, process, or judgment that is *necessary* or *appropriate* to carry out the provisions of" the Bankruptcy Code. *Law v. Siegel*, __ U.S. __, 134 S. Ct. 1188, 1194 (2014) (quoting 11 U.S.C. § 105(a)) (emphasis added).

otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Id.* at 6 (quoting *Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994)) (internal quotation marks omitted).

It is one thing for a bankruptcy court to use its equitable powers under § 105(a) to correct its own error in an attempt to prevent injustice. It is an entirely different matter for a bankruptcy court to abuse its equitable power by entertaining a late-filed motion for extension in the absence of any such error. This case involves the former situation.

To be clear, bankruptcy courts may not use their equitable power as a sword to increase their discretionary authority in a manner that conflicts with the Bankruptcy Code. See *Siegel*, 134 S. Ct. at 1194. But numerous cases suggest that, in certain instances, bankruptcy courts may call upon principles of equity to shield unwitting parties and correct their own errors. See, e.g., *In re Themy*, 6 F.3d at 689; see also *Francis v. Riso (In re Riso)*, 57 B.R. 789, 793 (D. N.H. 1986) ("[A] bankruptcy court cannot create substantive rights in exercising its equity powers . . . . Allowing [the creditor] to go forward with his objection, however, will not *create* a substantive right . . . but merely allow him to *exercise* that substantive right.") (emphasis in original). After all, as the court noted in *In re Crawford*, "[c]lerks of court make more errors than one might expect." *In re Crawford*, 347 B.R. at 46. Ultimately, after reviewing footnote 5 of the Fifth Circuit's *Neeley* opinion, the decisions from Texas bankruptcy

courts in cases like *In re Castleman* and *In re Crawford*, and cases from numerous courts of appeals, the court is satisfied that the weight of case law favors the appellees' position.

Ward calls attention to *Owen v. Miller (In re Miller)*, No. 04-80905-hdh-7, 2006 WL 6507922 (N.D. Tex. Mar. 28, 2006) (Lindsay, J.), cited by the bankruptcy court, to support his position that the bankruptcy court lacked the power to extend the deadline for filing objections. But, like the bankruptcy court below, this court finds the facts of *In re Miller* distinguishable from the facts in the present case. *See* Memorandum Opinion at 9. While *In re Miller* is a case from the Northern District of Texas, the facts lack a clerk's affirmative misstatement on the deadline for filing objections. *In re Miller*, 2006 WL 6507922, at *2 ("Although PACER showed inconsistencies concerning the date the section 341 meeting was to take place, it listed January 1, 2005 . . . as the complaint filing deadline. [The petitioner] does not contend that it received information from PACER, or the bankruptcy clerk's office, changing or resetting the January 1, 2005 . . . deadline."). Actually, the facts of *In re Miller* appear more analogous to the situation presented in *Neeley* itself, rather than the one contemplated in footnote 5 of that decision.

In addition, the facts do not suggest that the creditors purposefully flouted deadlines or engaged in intentionally dilatory tactics. Instead, the creditors

reasonably relied on the notice provided by the clerk of the court with jurisdiction over the matter.  See *In re Anwiler*, 958 F.2d at 929.

Therefore, after careful consideration, this court concludes that the bankruptcy court's decision on the timeliness of the creditors' motion is affirmed.

### 3.  *Denying Ward's Receipt of Discharge Under 11 U.S.C. § 727*

Ward also challenges the bankruptcy court's decision to deny him receipt of discharge under 11 U.S.C. § 727.  Brief of Appellant at 2-3.  As mentioned above, the bankruptcy court denied Ward's receipt of discharge under both § 727(a)(4)(A) and § 727(a)(5).  *See* Memorandum Opinion at 54-55.  With respect to the bankruptcy court's § 727(a)(4)(A) decision, Ward contends that (1) any falsehoods he made under oath lacked the requisite fraudulent intent, and (2) the appellees failed to establish the materiality of those statements.  Brief of Appellant at 11, 23.  As to the bankruptcy court's § 727(a)(5) analysis, Ward maintains that the bankruptcy court erred because the appellees failed to demonstrate that Ward lost substantial, identifiable assets.  *Id.* at 11, 28.

### a.  11 U.S.C. § 727(a)(4)(A)

According to Fifth Circuit precedent, "[t]o prevail on a claim under [§ 727(a)(4)(A)], an objecting plaintiff (a creditor or the trustee) must prove by a preponderance of the evidence 'that (1) the debtor made a . . . statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the

debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case.'" *In re Duncan*, 562 F.3d at 695 (quoting *Sholdra v. Chilmark Financial LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir.), *cert. denied*, 534 U.S. 1042 (2001).  Further, under Rule 4005, if the plaintiffs establish a prima facie case for denial of discharge, the burden shifts to the debtor.  *Id.* at 696.

False statements contained in the debtor's schedule or made by the debtor during the adversarial proceedings are sufficient to justify a bankruptcy court's denial of discharge.  *In re Duncan*, 562 F.3d at 695.  However, in considering whether a debtor's false statements were made with fraudulent intent, courts do not merely aggregate the debtor's mistakes.  *Chu v. Texas (In re Chu)*, 679 Fed. App'x 316, 319 (5th Cir. 2017).  Instead, fraudulent intent "can be established by a showing of actual intent or reckless indifference to the truth based on the cumulative effect of false statements."  *Id.*  While district courts and courts of appeal regularly afford a high degree of deference to bankruptcy courts' findings of fact, those findings that are "based on determinations regarding the credibility of witnesses" receive an "even greater deference because only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."  *First National Bank v. Crescent Electric Supply Company (In re Renaissance Hospital Grand Prairie)*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting

*Anderson v. Bessemer City, North Carolina*, 470 U.S. 564, 575 (1985)) (internal quotation marks omitted).

In this case, the bankruptcy court determined that Ward made the following false oaths warranting denial of discharge: (1) Ward made multiple false oaths regarding the gross income listed in his statement of financial affairs and his amended statement of financial affairs (Memorandum Opinion at 37); (2) Ward made false oaths in his schedule I and amended schedule I regarding both his and his wife's income, and Ward made a false oath when testifying at trial about how he calculated the financial figures contained in those documents (Memorandum Opinion at 44); (3) Ward made false oaths at trial and at the meeting of the creditors regarding the disposition of two automobiles and the resulting proceeds (Memorandum Opinion at 46); (4) Ward gave false testimony regarding the funding of the Ward Family Trust at the § 341 meeting (Memorandum Opinion at 47); (5) Ward made numerous false oaths in his statement of financial affairs, amended statement of financial affairs, and at trial regarding the operating dates of Lloyd Ward, P.C. and VL Capital (Memorandum Opinion at 50-51). The bankruptcy court concluded that each one of these instances constituted a separate and independent ground upon which to deny Ward's receipt of discharge.

In challenging the bankruptcy court's finding of fraudulent intent, Ward contends that his misstatements were unintentional mistakes and largely the product

of the stressful circumstances surrounding the bankruptcy proceedings. *See* Brief of

Appellant at 24-25 ("The undisputed evidence establishes [Ward] filed the [c]ase

under significant stress and time constraints."). Yet in reading the bankruptcy court's

meticulous recitation of Ward's "serial false oaths," two themes stand out. First,

Ward's mistakes were not few and far between, but rather frequent and purposeful,

evincing a careless disregard for the truth. *See, e.g.*, Memorandum Opinion at 36

("Ward's purposeful and continuing misstatements regarding his gross income,

coupled with the other false oaths . . . , show a clear pattern of reckless disregard for

the truth that this Court finds is sufficient to prove fraudulent intent."). Second, as a

lawyer and a sophisticated businessman, Ward should have known better. See, e.g.,

*id.* ("Ward is both a lawyer and a sophisticated businessman, having run multiple

businesses over many years . . . . Considering Ward's level of sophistication, the only

logical conclusion this Court can draw is that Ward's decision to only disclose his

'wages' was intentional and strategic.").

While the court acknowledges that litigation and, in particular, bankruptcy

proceedings can be quite stressful for litigants, stress alone cannot excuse a litigant's

complete disregard for the truth. Accordingly, the court affirms the bankruptcy

court's findings as to fraudulent intent.

On the question of materiality, Ward contends that because some of the

misstatements related to business rather than personal debts, they were immaterial to

the proceedings before the bankruptcy court. *See* Brief of Appellant at 27. But even

if some of Ward's falsehoods were immaterial to the bankruptcy proceedings, Ward

failed to address all of the bankruptcy court's false oath findings. Appellees' Brief at

11. In its opinion, the bankruptcy court made clear that each of the above false oath

findings constituted a separate and independent ground for denying Ward's receipt of

a discharge. Accordingly, in light of the overwhelming evidence in the appellate

record, this court cannot conclude that the bankruptcy court's decision to deny

discharge under § 727(a)(4)(A) was clearly erroneous.

### b. 11 U.S.C. § 727(a)(5)

Pursuant to § 727(a)(5), "[t]he court shall grant the debtor a discharge, unless

. . . the debtor has failed to explain satisfactorily, before determination of denial of

discharge under this paragraph, any loss of assets or deficiency of assets to meet the

debtor's liabilities." 11 U.S.C. § 727(a)(5). As referenced above, Rule 4005 provides

that "[t]he plaintiff in a discharge adversary proceeding carries the initial burden to

show that the debtor possessed substantial, identifiable assets that are now

unavailable for distribution to creditors." *In re Chu*, 679 Fed. App'x at 319 (internal

quotations omitted). "Once the unavailable assets are established, the burden shifts

to the debtor to show a 'satisfactory' explanation." *Id.*; *First Texas Savings Association,*

*Inc. v. Reed (In re Reed)*, 700 F.2d 986, 992-93 (5th Cir. 1983) ("While the burden of

persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that

the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case.").

"[A] satisfactory explanation in the context of this subsection is not the equivalent of a satisfactory result." *Neary v. Guillet (In re Guillet)*, 398 B.R. 869, 890 (Bankr. E.D. Tex. 2008). Indeed, "[t]he explanation need not be meritorious to be satisfactory." *Id.* (quoting *Cadlerock Joint Venture II, L.P. v. Robbins (In re Robbins)*, 386 B.R. 636, 643 (Bankr. W.D. Ky. 2008)). "[A] lack of wisdom in the debtor's expenditures, by itself, is not grounds for denial of a discharge." *Id.* (quoting *Cadlerock Joint Venture, L.P. v. Sauntry (In re Sauntry)*, 390 B.R. 848, 857 (Bankr. E.D. Tex. 2008) (internal quotations omitted)). Rather, "[t]he test under § 727(a)(5) relates to the credibility of the proffered explanations, not the propriety of the disposition." *Id.* (quoting *First American Bank of New York v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 34 (Bankr. E.D.N.Y. 1994)). As such, the key question for the court to consider under § 727(a)(5) "is *what* happened to the assets, not *why* it happened." *Id.* (quoting *In re Bodenstein*, 168 B.R. at 34) (emphasis added).

Ward argues that the appellees failed to meet their initial burden at trial. *See* Brief of Appellant at 29. According to Ward, the bankruptcy court erred because the appellees' evidence was insufficient to establish a prima facie case under § 727(a)(5). Reply Brief of Appellant at 27. Merely alleging that the debtor has failed to explain certain losses is insufficient. *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349,

371 (Bankr. N.D. Tex. 2010) (Houser, Bankr. J.). To establish a prima facie case, the creditors must produce some evidence of the disappearance of substantial assets or of unusual transactions. *Id.* (citing *In re Reed*, 700 F.2d at 993)).

Here, Lloyd Ward Group, P.C.'s tax return from 2010 showed compensation to officers of $ 1,325,000. Memorandum Opinion at 52. During trial, Ward first testified that he was the sole officer of the Lloyd Ward Group, P.C. *Id.* But when questioned a second time about being the sole officer of Lloyd Ward Group, P.C., Ward changed his testimony and claimed that the entity had two additional officers. *Id.* Giving Ward's testimony the benefit of the doubt, the bankruptcy court concluded that, based on the 2010 tax return and Ward's trial testimony, Ward received at least $ 900,000 in compensation. *Id.* at 53.

According to Ward, this finding was erroneous. He argues that because the testimony the bankruptcy court relied on only supported a finding that Ward was the sole officer between 2012 and 2014, it lacked any logical nexus with the entity's 2010 tax return. *See* Brief of Appellant at 29-30; Reply Brief of Appellant at 27-28.

In its memorandum opinion, the bankruptcy court described Ward's testimony throughout trial as "self-serving, not credible, or both." *Id.* at 53. Continuing, the bankruptcy court found that "Ward's testimony often changed based upon the situation he was presented with -- *e.g.*, he was the only officer, until shown substantial compensation to officers; the tax returns were accurate, until they conflicted with his

schedules or were harmful to him." *Id.* Given Ward's motives to obfuscate and propensity to contradict himself, the bankruptcy court had to make credibility determinations and draw inferences from the totality of Ward's trial testimony. In accordance with the requirements of Rule 4005, the appellees provided *some evidence*, the 2010 tax return. The tax return and the totality of Ward's trial testimony supported a finding that Ward received at least $900,000 as an officer of Lloyd Ward, P.C. in 2010. Indeed, as the bankruptcy court noted, "[i]t is simply not plausible that Ward (a lawyer and sophisticated businessman) would permit an entity he controlled to file a tax return showing substantial compensation to him if, in fact, that money was not paid to him." *Id.* at 54.

Ward also maintains that the bankruptcy court erred in inferring that compensation as stated on a company's tax return counts as an asset under § 727(a)(5). Brief of Appellant at 30. Referencing the Internal Revenue Code, Ward contends that compensation includes expenditures paid by a company, which would not count as an asset for purposes of the Bankruptcy Code. See *id.* at 30-31. The court finds this argument unpersuasive. Black's Law Dictionary defines the term "asset" as "[a]ll the property of a person (especially a bankrupt or deceased person) available for paying debts or for distribution." *Asset*, BLACK'S LAW DICTIONARY (10th ed. 2014). Surely $900,000 or $1,325,000 of wages paid to an officer, as reflected in a company's tax return, counts under this definition. And, further, no facts suggest

that the figure reflected in the 2010 tax return was anything other than a direct payment from the company to Ward and, ostensibly, its other officers.

In consideration of the foregoing, this court concludes that the bankruptcy court did not err in determining that the appellees met their trial burden to establish a prima facie case. Because Ward does not present arguments contesting the bankruptcy court's finding that he failed to satisfy his burden to provide a satisfactory explanation, the court ends its analysis here. Therefore, the bankruptcy court's decision to deny Ward's receipt of discharge under § 727(a)(5) is affirmed.

### III. CONCLUSION

For the reasons stated above, the bankruptcy court's judgment is **AFFIRMED**.

**SO ORDERED.**

March 15, 2018.

A. JOE FISH
**Senior United States District Judge**